UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

AILEEN DAYMON,

        Plaintiff,

vs.                                       Case No.  3:11-cv-1108-J-32MCR

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

        Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[2]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **REVERSED** and the case is remanded for further proceedings.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on March 5, 2005, alleging a period of disability beginning October 1, 2004.  (Tr. 115-18).  The

---

      [1]      Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

      [2]      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 12).

Social Security Administration denied this application initially and on reconsideration. (Tr. 93-98). Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"), which was held on August 2, 2007. (Tr. 92, 637-680). In a decision dated September 13, 2007, the ALJ found Plaintiff not disabled. (Tr. 61-76). Plaintiff requested review of the ALJ's decision by the Appeals Council and on January 9, 2009, the Appeals Council remanded the claim for a new hearing and decision. (Tr. 48-51, 60). The Appeals Council ordered the ALJ to give further consideration to the treating source opinions; give further consideration to the claimant's residual functional capacity; and, to obtain additional evidence from a Vocational Expert. (Tr. 50).

A second hearing was held before on May 27, 2009. (Tr. 681-718). In a decision dated October 21, 2009, the ALJ found Plaintiff was not disabled prior to January 20, 2009. (Tr. 22-39). The Appeals Council denied Plaintiff's request for review (Tr. 8-12), rendering the ALJ's decision final. See 20 C.F.R. § 404.981. Plaintiff timely filed her Complaint in the U.S. District Court for review of the Commissioner's decision. (Doc. 1). This case is now ripe for review under 42 U.S.C. § 405(g).

## II.    NATURE OF DISABILITY CLAIM

### A.    Summary of Evidence Before the ALJ

Plaintiff was 50 years old at her alleged disability onset date and 54 years old on the date the ALJ found her disability began. (Tr. 115). Plaintiff has a high school education and work history as a hospital claims supervisor and a biller/coder. (Tr. 122-29, 141-48, 644). Plaintiff claims that she is disabled as a result of cardiovascular disorder, post-traumatic stress disorder, depression, and hypertension. (Tr. 123).

Because the majority of Plaintiff's arguments center around the weight provided to certain medical providers, the Court will divide its summary of Plaintiff's medical history by medical provider.[3]

### 1.     Dr. Donald Pollock, M.D.

Plaintiff began receiving psychiatric care with psychiatrist Dr. Donald Pollock in February 2004. (Tr. 391). On October 13, 2004, Plaintiff was admitted to a partial hospitalization program due to her depression and anxiety with recurrent panic attacks. (Tr. 248). A mental status examination performed at that time revealed Plaintiff suffered from depressed mood, poor sleep, decreased appetite, loss of enjoyment, panic attacks, and suicidal thoughts. Plaintiff was diagnosed with major depressive and panic disorder and prescribed medication. (Tr. 248-49).

On October 25, 2004, Dr. Pollock diagnosed Plaintiff with post-traumatic stress disorder ("PTSD") resulting from her previous cardiac problems. (Tr. 383). On November 8, 2004, Dr. Pollock noted Plaintiff suffered from severe depression and increased her medication dosage. On November 22, 2004, Plaintiff stated she felt dizzy, uncoordinated, and sad. (Tr. 382). On December 17, 2004, Plaintiff reported increased blood pressure and headaches. (Id.). On January 12, 2004, Plaintiff felt sad and Dr. Pollock increased her medication. No changes were noted on January 21, 2005. (Tr. 380). On March 23, 2005, Dr. Pollock noted that Plaintiff was frequently tearful. (Tr. 376).

---

[3]     Only those medical opinions relevant to this decision will be included.

On April 8, 2005, Plaintiff stated that her mood was unchanged and she had vague suicidal thoughts. (Tr. 371). On April 25, 2005, Dr. Pollock reported that Plaintiff's mood remained depressed. (Id.). On June 27, 2005, Plaintiff reported no changes in her mood. (Tr. 368). On July 18, 2005, Plaintiff reported difficulty sleeping. On September 21, 2005, a mental status examination revealed tearfulness and suicidal ideation. Dr. Pollock increased Plaintiff's medication dosage. (Id.). On October 7, 2005, Dr. Pollock again diagnosed Plaintiff with major depressive disorder. (Tr. 366).

On December 1, 2005, Dr. Pollock completed a Psychiatric/Psychological Impairment Questionnaire of Plaintiff. (Tr. 415-22). Dr. Pollock diagnosed Plaintiff with major depressive disorder, recurrent, severe, and PTSD. (Tr. 415). He opined Plaintiff was markedly limited in her ability to understand, remember, and carry out detailed instructions; her ability to maintain attention and concentration for extended periods; her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; her ability to sustain ordinary routine without supervision; her ability to work in coordination with or proximity to others without being distracted by them; and, her ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 418-19). Dr. Pollock also opined that Plaintiff was markedly limited in her ability to interact appropriately with the general public; her ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; her ability to respond appropriately to changes in the work setting; and, her ability to set realistic goals or make plans independently. (Tr.

419-20). Dr. Pollock further opined that Plaintiff was incapable of handling even low stress work due to her depression and anxiety. (Id.).

On January 16, 2006, Plaintiff reported no changes in her mood. (Tr. 510). On February 16, 2006, Plaintiff reported constant nausea. (Tr. 509). On April 3, 2006, Plaintiff reported a depressed mood and feelings of hopelessness. (Tr. 508). On May 8, 2006, a mental status examination revealed tearfulness and fearfulness. (Tr. 507). On June 12, 2006, Plaintiff stated that her anxiety was increased. (Tr. 506). On August 7, 2006, Dr. Pollock reported that Plaintiff's mood was depressed. On October 30, 2006, Plaintiff reported anxiety centered on her cardiac condition. (Tr. 504). On November 8, 2006, Plaintiff had continued complaints of anxiety. (Tr. 503). No changes were noted on January 26, 2007 and February 23, 2007. (Tr. 502).

### 2. Dr. D. Kevin White, M.D.

Primary care physician Dr. D. Kevin White has been treating Plaintiff for approximately 20 years. (Tr. 438). On November 17, 2005, Dr. White evaluated Plaintiff for complaints of increased fatigue and chest pain but believed her symptoms were psychological. (Tr. 440).

In a letter dated April 28, 2006, Dr. White opined that Plaintiff suffered a myocardial infarction in 2003 and since that time had continued to have chest discomfort despite normal testing. Dr. White opined that Plaintiff was disabled primarily as a result of her psychiatric issues. (Tr. 438).

In a report dated February 8, 2007, Dr. White opined Plaintiff was unable to work as a result of her coronary artery disease, which was recently found to have worsened.

It was noted that Plaintiff had a recent cardiac catheterization with stent placement due to worsening of her cardiac condition with evidence of blockage, and she required multiple heart medications.  (Tr. 493).  Specifically, Dr. White opined that Plaintiff could lift no more than 2 pounds and was limited to perform 1 hour of sedentary work activities in an 8-hour workday.  (Tr. 496).

### 3. Dr. Patricia Munda, M.D.

Plaintiff began treatment with primary care physician Dr. Patricia Munda on December 11, 2008.   At that time, Plaintiff reported falling and hurting her right side and a history of a heart conditions.  (Tr. 622).  Dr. Munda diagnosed Plaintiff with ankle/foot pain possibly due to gout, uncomplicated diabetes, hypertension, depressive disorder, anxiety, and heart disease.  (Tr. 623-24).

Dr. Munda completed a Multiple Impairment Questionnaire of Plaintiff on May 11, 2009 and diagnosed coronary artery disease, depression, and anxiety.  (Tr. 590-97). Dr. Munda opined Plaintiff was able to sit 4 hours total and stand/walk 3 hours total in an 8-hour workday.  She also needed to get up and move around every 2 hours when sitting.  (Tr. 592).  Dr. Munda stated that Plaintiff suffered from significant limitations doing repetitive reaching, handling, fingering, and lifting due to finger numbness and pain and was essentially precluded from using her upper extremities for grasping, turning, and twisting objects, performing fine manipulations, and reaching.  (Tr. 593-594).  Dr. Munda assessed that Plaintiff's symptoms were constantly severe enough to interfere with her attention and concentration and she was incapable of handling even low stress work.  She also required breaks to rest every 1 to 2 hours

-6-

during an 8-hour workday for 30 to 60 minutes each time. (Tr. 595). Dr. Munda estimated that Plaintiff would be absent from work, on the average, more than three times a month due to her impairments or treatment. (Tr. 596).

### 4. Dr. Hung V. Tran, M.D.

Consultative examiner Dr. Tran evaluated Plaintiff on February 20, 2006 and diagnosed coronary artery disease and depression but failed to give an opinion as to Plaintiff's functional capacity. (Tr. 423-25).

### 5. Non-Examining Medical Consultants

Dr. Val Bee, Psy.D. reviewed Plaintiff's claim file on June 23, 2005 and found evidence of a depressive syndrome characterized by sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty thinking or concentrating and an anxiety disorder. (Tr. 272-74). Dr. Bee opined Plaintiff had moderate limitations in concentration, persistence, or pace. (Tr. 279). She also found moderate limitations in Plaintiff's ability to maintain attention and concentration for extended periods; her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and, her ability to set realistic goals or make plans independently. (Tr. 283-84).

Dr. Steven Wise, Psy.D. reviewed Plaintiff claim file on November 15, 2005 and found the same limitations as Dr. Bee. (Tr. 407, 411-412). In addition, Dr. Donald Morford, M.D., reviewed Plaintiff's claim file on March 10, 2006 and opined she was capable of performing light work. (Tr. 431-37).

**B.** **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ found Plaintiff's coronary artery disease and depression constituted severe impairments. (Tr.

22-39). At step three, the ALJ determined Plaintiff did not have an impairment, or any combination thereof, which met or equaled any of the impairments listed in Appendix 1, Subpart P of Regulation No. 4. (Tr. 27-30). At step four, the ALJ determined Plaintiff retained the residual functional capacity ("RFC")[4] to perform a range of light work that precluded her from performing her past relevant work.[5] (Tr. 28-31).

At step five, the ALJ relied on vocational expert ("VE") testimony and the Medical Vocational Guidelines ("Grids"), 20 C.F.R. pt. 404, subpt. P, app. 2, sec. 202.14, to find that, prior to January 20, 2009, Plaintiff could perform a significant number of jobs in the national economy and was, therefore, not disabled. (Tr. 37-38).

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of

---

[4] The residual functional capacity is the most an individual can do despite the combined effect of all of their credible limitations. 20 C.F.R. §§ 404.1545. The residual functional capacity is based on all of the relevant evidence in the case record, and is assessed at step four of the sequential evaluation. Id.

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B. Issues on Appeal

Plaintiff essentially raises two issues on appeal. Specifically, Plaintiff argues that the ALJ erred by: (1) failing to properly assess the opinions of Plaintiff's treating physicians (Doc. 14, pp. 17-22); and (2) failing to properly consider Plaintiff's subjective complaints of pain (Id. at pp. 22-26).[6] The Court will address each of these issues.

---

[6] The Court notes Plaintiff's argument that she is *per se* disabled under Medical Listing 12.04. (Doc. 14, pp. 15-18). In support of her argument, Plaintiff cites to Dr. Pollock's December
(continued...)

### 1. Whether the ALJ properly considered the opinions of Plaintiff's treating sources.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's sequential process for determining disability. Bruner v. Comm'r of Soc. Sec., 2009 U.S. Dist. LEXIS 87131, 2009 WL 3052291 (M.D. Fla. 2009).  The ALJ may, however, reject any medical opinion if the evidence supports a contrary finding.  Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1986).  Nonetheless, the ALJ must state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error.  Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).

Here, Plaintiff contends that the ALJ failed to properly analyze the opinions of her treating sources.  Specifically, Plaintiff argues the ALJ failed to give proper weight to opinions of treating physicians Drs. Pollock, White, and Munda and, instead, gave considerable weight to the opinions from the non-examining medical consultants.  (Doc. 14, pp. 17-22).

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004); Lewis v. Callahan,

---

⁶(...continued)
2005 opinion that Plaintiff was incapable of even low stress work, had mild to marked limitations in work-related abilities, and experienced episodes of decompensation. (Tr. 418-20). However, Dr. Pollock's definition of episodes of decompensation is inconsistent with the definition regarding listing 12.04, which requires repeated episodes of decompensation each of extended duration. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.  Thus, the Court finds Plaintiff's argument is without merit.

125 F.3d 1436,1440 (11th Cir. 1997); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. Lewis, 125 F.3d at 1440. Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. MacGregor, 786 F.2d at 1053. Good cause for rejecting a treating source's opinion may be found where the treating source's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. Phillips, 357 F.3d at 1240-41 (citing Lewis, 125 F.3d at 1440); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987). Where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. MacGregor, 786 F.2d at 1053.

Here, the Court agrees with Plaintiff's contention that the ALJ failed to properly assess the opinions of her treating physicians. Indeed, the ALJ failed to offer any support for her opinion that the non-examining psychologists who reviewed the record were better qualified to give an opinion on Plaintiff's condition than her treating specialists. See Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988); Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) ("The opinions of nonexamining, reviewing physicians…when contrary to those of examining physicians are entitled to little weight in a disability case"); Johnson v. Barnhart, 138 Fed. Appx. 266, 271 (11th Cir. 2005)

(conclusions from non-examining physicians are "not dispositive"); Kemp v. Astrue, 308 Fed. Appx. 423, 427 (11th Cir. 2009) (ALJ may rely on non-examining physician only when supported by other evidence).

The ALJ improperly rejected the opinions from Dr. Pollock on the basis that he did not document Plaintiff's panic attacks and because Plaintiff was noted to be doing better at a single visit. However, Dr. Pollock did note Plaintiff's panic symptoms and consistently noted Plaintiff's severe problems with depression with associated symptoms. The fact that Plaintiff felt better at a single visit says little about her limitations over a longitudinal time-period and Dr. Pollock's records show no evidence of sustained improvement.

In determining Plaintiff's physical limitations, the ALJ stated Dr. White's opinion in February 2006 that Plaintiff was disabled and could perform only 1 hour of sedentary work a day in an 8-hour workday was not given controlling weight because records showed that her cardiovascular status was generally stable with treatment. In addition, the ALJ noted that Dr. White had previously reported Plaintiff was not disabled due to her cardiovascular condition, but due to her psychiatric conditions. (Tr. 35). However, the ALJ's discussion of Plaintiff's cardiac condition ignores the fact that Dr. White's initial opinion on Plaintiff's physical limitations were rendered prior to a cardiac catheterization that showed additional blockage in the coronary arteries and stent placement in late 2006 documenting Plaintiff's condition was more severe than originally believed. The ALJ also rejected the opinions from Plaintiff's later treating physician, Dr. Munda, and noted there was no evidence that Plaintiff had ongoing chest pain or other

symptoms that would cause severe limitations in sitting, standing, walking, lifting, and carrying, as described by Dr. Munda. (Tr. 36).

The Court finds the ALJ failed to provide adequate reasoning for rejecting the opinions of Plaintiff's treating physicians while giving considerable weight to the opinions from the non-examining medical consultants. Thus, on remand, the ALJ is directed to re-evaluate the opinions of treating physicians Drs. Pollock, White, and Munda and accord them proper weight.

### 2. Whether the ALJ properly considered Plaintiff's subjective complaints of pain.

Plaintiff argues that the ALJ failed to properly evaluate her credibility. (Doc. 14, pp. 22-26). The standard for evaluating subjective complaints requires the following:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain/limitations arising from that condition or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain/limitations.

Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). A claimant's statements about pain or other symptoms will not alone establish disability. See 20 C.F.R. §§ 404.1529(a), 416.929(a). Rather, medical signs and laboratory findings must be present showing a medical impairment(s) that could reasonably be expected to produce the symptom(s) alleged. Id.; see also Edwards v. Sullivan, 937 F.2d 580, 584 (11th Cir. 1991). When an impairment that could reasonably be expected to produce the symptoms alleged has been shown, the intensity and persistence of the symptoms, such as pain, will be

evaluated based on all the evidence. See 20 C.F.R. §§ 404.1529(c), 416.929(c). The district court reviews the ALJ's credibility determination to determine whether, as a whole, it is supported by substantial evidence of record. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Though the ALJ's credibility determination cannot be so broad to prevent subsequent review, the ALJ need not cite to particular phrases or formulations in making his credibility determination. Id. at 1210. The nature of a claimant's symptoms, the effectiveness of medication, the claimant's activities, and other factors are relevant in the consideration of subjective symptoms such as pain. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); Macia v. Bowen, 829 F.2d 1009 (11th Cir. 1987).

Here, the ALJ found that the record included objective medical findings which confirmed the presence of several severe impairments. However, the ALJ found that Plaintiff's testimony was credible only to the extent that the alleged symptoms prevented her from performing work beyond her RFC. (Tr. 32-33).

Reviewing the record as a whole, the ALJ's conclusion -- that Plaintiff's medical evidence of record provides a basis for discounting her subjective pain testimony -- is not well-founded.[7] Thus, on remand, the ALJ must re-evaluate Plaintiff's credibility.

## IV. CONCLUSION

For the reasons stated herein, the Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the

---

[7] The Court has offered an extensive review of Plaintiff's medical history in the "Summary of the Evidence" Section of this Memorandum Opinion and Order.

Commissioner's decision and **REMANDING** the matter to the ALJ with instructions to: (1) re-evaluate the medical opinions of treating physicians Drs. Pollock, White, and Munda and accord them proper weight; (2) re-evaluate Plaintiff's credibility; and (3) conduct any other proceedings deemed appropriate.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration. However, this Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this  8th  day of March, 2013.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record